IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**GERALD P. LUCERO,**

        Plaintiff,

vs.                                                          Civ. No. 05-1045 ACT

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision filed March 21, 2006. Docket No. 9. The Commissioner of Social Security issued a final decision denying benefits finding that Plaintiff was not disabled. Having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, the Court finds that the motion is not well taken and will be denied.

### I.  PROCEDURAL RECORD

Plaintiff, Gerald P. Lucero, filed an application for Supplemental Social Security Income and Disability Insurance Benefits on April 10, 2003. Tr. 45, 278. He is alleging a disability since March 1, 2002, due to a combination of mental impairments. His application was denied at the initial and reconsideration level.

The ALJ conducted a hearing on April 14, 2005. Tr. 281. At the hearing, Plaintiff was

represented by an attorney. On May 19, 2005, the ALJ issued an unfavorable decision finding at step four that Plaintiff could perform his past relevant work as a cook. Tr. 14.

On July 29, 2005, the Appeals Council issued its decision denying Plaintiff's request for review and upholding the final decision of the ALJ. Tr. 3-5. The Plaintiff subsequently filed his Complaint for judicial review of the ALJ's decision on September 30, 2005.

## II.  STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1486 (1993). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520(a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show: 1) he is not engaged in substantial gainful employment; 2) he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities; 3) his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1; or 4) he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *Id.*

### III.  MEDICAL HISTORY

Plaintiff was treated by Kiran Sharma, M.D. at La Casa De Buena Salud, Inc. from April 2001 to November of 2003. Tr. 196, 209. He sought treatment for his addiction to Valium and treatment of his mental disorders. Tr. 209. Dr. Sharma diagnosed Plaintiff with depression, panic attacks, anxiety, bipolar and paranoia schizophrenia. Tr. 196-202, 204-09. Other than these diagnoses, Dr. Sharma's notes reflect little more than Plaintiff's medications which included Zoloft and Zanax. *Id.*

Plaintiff was treated by Mental Health Resources, Inc. beginning January 9, 2003. Tr. 191-195. On January 9, 2003, a counselor, Johnny Casady, wrote a "Summary and Clinical Impressions" report. Tr. 191-93. He found that the Plaintiff was oriented as to time, person, place and situation. Tr. 181. His appearance was appropriate and his affect was normal; though a little nervous during sessions. His memory, insight and "personal psychodynamics" were average or better. Tr. 192. He further found that Plaintiff's cognitive content and processing were "relatively average." *Id*. He further found that Plaintiff's ability to manage his daily activities were "moderately impaired." *Id*.

In discussing Plaintiff's functional impairments, Mr. Casady wrote that he tends to isolate himself and this prevents him from going out in public. Tr. 193. Mr. Casady recommended that Plaintiff receive help from "Supported Employment services" to secure employment. *Id.* He found his Global Assessment of Functioning ("GAF") to be 50.[1]

During this time, Plaintiff was prescribed various anti-depressant and anti-anxiety medications. Tr. 176-81. The record reflects that these medications helped the Plaintiff. In March of 2003, it was noted that Plaintiff felt fine with his present medications, that he was stabilizing and had no panic attacks since the last visit. Tr. 180. On July 3, 2003, Plaintiff was noted to be relaxed and stable. Tr. 178. On August 28, 2003, Plaintiff was found to have no signs of decompensation and was stable. Tr. 177.

On February 16, 2004, the staff at Mental Health Resources, Inc. completed an "Annual Clinical Assessment Update Form." Tr. 267-270. It was noted that Plaintiff still had symptoms of depression, anxiety, panic attacks and mania. Tr. 208. However, in evaluating Plaintiff's mental status, it was observed that his affect was appropriate, his communication logical, rational and coherent and his perception normal. Tr. 207. Plaintiff was found to be oriented as to time, place, person and situation; his memory was normal; his insight was limited, his thought content appropriate; and his thought process logical. *Id.* His GAF was 52.[2] Tr. 268.

The record also contains an "Annual Assessment and Clinical Summary" dated April 10, 2004 by Johnny Casady, LMHC. Tr. 271. Mr. Casady's note states that Plaintiff was continuing to receive

---

[1] The GAF rates an individual's "psychological, social, and occupational functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994). A rating of 50 indicates serious symptoms or serious impairment in social, occupational, or school functioning.

[2] A score of 52 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

outpatient treatment and medication services from the staff psychiatrist. It is Mr. Casady's opinion that Plaintiff's "psychiatric status has improved mildly." *Id.* Mr. Casady notes:

> A current MSE reveals that his appearance is typically appropriate, his posture is normal, his facial expressions indicate a slightly anxious mood as does his voice, his general body movements are unremarkable, his speech even when he is excited sounds soft and reserved, he is usually compliant with an affect that is mostly appropriate to the situation. No deficiencies in communication, intellectual functioning, memories, or thought process are apparent. He often perceives situations as worse than they are because of his anxiety disorder. His insight is somewhat limited. His judgment is mostly intact but is impaired in his decision making mildly. Most of his thought content is appropriate though he does tend to catastrophize (sic).

*Id.*

He further noted again that Plaintiff "continues to isolate himself from others." *Id.*

A Psychiatric Review Technique form was completed on September 4, 2003 by Scott Walker, M.D and reviewed by E. Chiang, M.D, both non-examining consulting physicians. Tr. 160-174. Dr. Walker found that Plaintiff suffered from affective and anxiety related disorders. He found Plaintiff had no limitations as far as activities of daily living; moderate difficulty in maintaining social functioning; mild limitation in maintaining concentration, persistence or pace and had never had an episode of decompensation. Tr. 170. These findings again were reviewed by Dr. Chiang on December 22, 2003 who found that Plaintiff's diagnosis and level of impairment remained unchanged. Tr. 172.

The records also show that Plaintiff has a history of seizures but that they were under control. The ALJ found that he had not experienced a seizure since 2000. The Plaintiff does not dispute the ALJ's finding that this condition is not a "severe" impairment. Tr. 12. The Plaintiff also does not dispute that he has no exertional limitations. *Id.*

5

## IV. DISCUSSION

In his Motion, Plaintiff asserts that: the ALJ's findings are not supported by substantial evidence; the ALJ erred in his analysis and assessment of Plaintiff's mental impairment; the ALJ erred in his evaluation of Plaintiff's residual functional capacity; and the ALJ erred in failing to solicit vocational expert testimony.

**Plaintiff's burden.**

To qualify for benefits Plaintiff must demonstrate, in accordance with the relevant portion of Section 2223(d) of the Act, 42 U.S.C. § 423(d), that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which can be expected to result in death or last or can be expected to last for at least 12 months. 42 U.S.C. § 416(1)(10). The Act defines a physical or mental impairment as one "that results from anatomical, psychological or psychological abnormalities which are demonstrated by medically acceptable clinical or laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Commissioner's regulations require claimants to support their allegations through medically acceptable clinical and diagnostic techniques. 20 C.F.R. § 404.1513. As discussed below, Plaintiff has failed to meet his burden. Specifically, the substantial evidence demonstrates that the sole functional limitation as a result of Plaintiff's mental condition is that he should have "minimal interaction with the general public..." Tr. 13. And the ALJ applied the correct legal standards when he determined that this limitation does not prevent the Plaintiff from returning to his employment as a cook.

**Analysis and assessment of Plaintiff's mental impairment.**

Plaintiff's argument is not clearly presented. It appears that Plaintiff is asserting that he meets the listings at step three for Listing 12.04, Affective Disorders.

6

The listing of impairments describes impairments that are considered severe enough to prevent a person from performing any gainful activity. 20 C.F.R. §S 404.1525(A), 416.925(A). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). Plaintiff failed to meet his burden at step three.

The ALJ specifically considered whether Plaintiff met Listings 12.04 and 12.06 and the ALJ properly determined that Plaintiff did not meet the "B" criteria. To satisfy the "B" criteria of Listing 12.04, the Plaintiff must have at least two marked impairments in the areas of functioning. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.04.[3] In analyzing the four areas of functioning set out in the "B" criteria, the ALJ found that Plaintiff had mild limitations in his daily activities; moderate limitations in social functioning; mild limitations in the ability to sustain concentration, persistence and pace and that Plaintiff had no extended periods of decompensation. Tr. 13.

Plaintiff contends that he has marked restrictions of activities of daily living and in social functioning. The substantial evidence is to the contrary. In 2003, Mr. Casady found that Plaintiff's daily activities were "moderately impaired." Tr. 192. It was noted in the record that in March of 2003, Plaintiff felt fine with his present medications and in August of that year he was stable. Tr. 180, 177. In February of 2004, Plaintiff was oriented as to time, place, person, situation, his memory was normal, his insight was limited, his thought content appropriate and his thought process logical. Tr. 207. Furthermore, a non-examining physician found that Plaintiff had no limitations as to activities

---

[3] A "marked" limitation "means more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(C). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

7

of daily living; moderate difficulty in maintaining social functioning; mild limitation in maintaining concentration, persistence or pace and never had an episode of decompensation. Tr. 170.

In addition, the ALJ also properly noted that a third party questionnaire completed by the Plaintiff's mother indicated that Plaintiff "cares for his personal needs, goes out for rides, does laundry and cleaning, shops, pay bills, and prepares meals (Exhibit 1E60)." Tr. 13, 81.

Thus, the substantial evidence is that Plaintiff did not have two marked impairments in the areas of functioning as required by Listing 12.04.

**Residual functional capacity.**

In determining Plaintiff's RFC, the ALJ found that Plaintiff had no exertional limitations and "is mentally restricted to occupations which are non-public in nature." Tr. 14. The determination of a claimant's RFC is the extent to which the claimant's impairments and related symptoms affect her capacity to do work-related activities. Social Security Ruling 96-5p (1996 WL 374183); SSR 96-8p (1995 WL 374184). An evaluation of an RFC is a decision of what a Plaintiff can do despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ determines an individual's RFC based on all the evidence. 20 C.F.R. § 404.1546.

Plaintiff asserts that the ALJ erred in this finding in that it was based on a finding that the ALJ found that the Plaintiff had no restrictions on his daily activities. The ALJ did not find that Plaintiff had no restrictions on his daily activities. Rather the ALJ found that Plaintiff had "no more than 'mild' limitations" in his activities of daily living. Tr. 13. As discussed above, this finding is supported by the substantial evidence.

Plaintiff further asserts that the ALJ relied on some evidence and disregarded other evidence. As an example, Plaintiff states that the record shows that his shopping is limited to once a month; he

has to be reminded to take a shower; and he does not like to go anywhere. These portions of the record support the fact that Plaintiff has mild limitations in activities of daily living. They do not, as Plaintiff argues, contradict the ALJ's findings.

Plaintiff also asserts that the ALJ overlooked the fact that Plaintiff reported to his counselor that he had panic attacks. Tr. 182. The ALJ did mention Plaintiff's panic attacks in the decision. Tr. 12. Furthermore, the ALJ considered all of the functional limitations noted by his health care providers.

Plaintiff contends that his "treating psychologist, Dr. Casady" opined that he was "limited in his choice of possible places of employment." Brief, Tr. 193. This statement is consistent with the ALJ's finding that Plaintiff could perform some of his past relevant work as a cook. The Court also notes that Mr. Casady recommended that Plaintiff "receive Supported Employment services to help him secure employment." *Id.* Mr. Casady's statements do not support a finding that Plaintiff was disabled for all work.

Furthermore, Plaintiff's reliance on the records of Mr. Casady to establish his disability is misplaced. Mr. Casady is not a psychologist but rather a counselor. Mr. Casady is an "other source," rather than "acceptable medical source" as defined by the regulations. 20 C.F.R. § 404.1513(1)(2). Thus, Mr. Casady's reports and opinions cannot be evidence for establishing that Plaintiff has a medically determinable impairment. However, the ALJ may use his reports and opinions to determine the severity of an impairment as the ALJ did in this case. 20 C.F.R. § 404.1513(d).

Finally, Plaintiff asserts that the ALJ erred in failing to consider Plaintiff's Global Assessment of Functioning ("GAF") rating. Mr. Casady gave Plaintiff a rating of 50 and 52. Tr. 189, 208. As discussed above, Mr. Casady is not an "acceptable medical source" and thus the ALJ does not have

to consider Mr. Casady's assessment.

The Court notes that Plaintiff asserts that these ratings were signed off by Dr. Gravados, a treating psychiatrist. Any error on the part of the ALJ in not considering this fact is harmless for the following reasons. There are no treatment notes, tests or opinions of Dr. Gravados to support the rating. Social Security Ruling 96-2p, 1996 WL 374188 at *2 (to be accorded controlling weight, treating source's opinion must be supported by "'medically acceptable' clinical and laboratory diagnostic techniques" because ALJ cannot decide a case in reliance on medical opinion "without some reasonable support for the opinion"). Moreover, the GAF rating is inconsistent with the reports signed by Dr. Gravados. The reports indicate that Plaintiff was oriented as to time, person, place and situation. Tr. 181, 207. In the January 9, 2003 report Mr. Casady found that Plaintiff's appearance was appropriate and his affect was normal; his memory and insight were average or better and; his cognitive content and processing was average. Tr. 192-93. In the February 2004 report, Mr. Casady found that Plaintiff's affect was appropriate, his communication logical, rational and coherent and his perception normal. Tr. 207. Moreover, the reports do not indicate that these GAF scores were given because of an impairment of Plaintiff in his ability to work; the limitation mentioned by Plaintiff's mental health providers was his tendency to isolate himself. The ALJ considered this and specifically found that Plaintiff was "mentally restricted to occupations which are non-public in nature." Tr. 14. The ALJ did not err.

### **Substantial evidence**.

Plaintiff asserts that the ALJ's finding that Plaintiff's mental impairment limited him to occupations which were "non-public" in nature is not supported by the substantial evidence. Defendant is correct in arguing that Plaintiff does not cite to any evidence in the record to support

this claim. Moreover, the evidence does not support Plaintiff's assertion.

As stated above, a decision is not supported by substantial evidence if other evidence in the record overwhelms the evidence supporting the decision. *Gossett*, 862 F.2d at 805. As demonstrated by the medical records, the functional limitation that the ALJ found, "minimal interaction with the general public," is the only functional limitation supported by the substantial evidence in the record.

### Vocational expert.

Plaintiff asserts that the ALJ erred in not consulting a vocational expert. This matter was decided at step four. The ALJ is not required to obtain testimony of a vocational expert in a step-four proceeding. *Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994). Nor is the ALJ required to evaluate Plaintiff's claim at step five when he has made a disability determination at step four. *Williams,* 844 F.2d at 750. Thus, the ALJ did not err in not consulting a vocational expert.

For all the foregoing, the Court finds that the ALJ's decision is supported by the substantial evidence and that ALJ applied the correct legal standards.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Decision is denied.

_____
**ALAN C. TORGERSON**
**UNITED STATES MAGISTRATE JUDGE,**
**PRESIDING**